Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| *3A GROUP LLC.* <br> **Recurrida** <br><br> V. <br><br> *TEKSOL INTREGRATION GROUP, STRYKER PUERTO RICO, LLC.* <br> **Peticionario** | KLCE202500216 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Guayama <br><br> Caso Núm: AY2024CV00009 <br><br> Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 25 de marzo de 2025.

El 5 de marzo de 2025, Stryker Puerto Rico, LLC (Stryker o peticionario) compareció ante nos mediante una *Petición de Certiorari* y solicitó la revisión de una Resolución Interlocutoria que se emitió y notificó el 7 de febrero de 2025 por el Tribunal de Primera Instancia, Sala Superior de Arroyo (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la *Moción de Desestimación Parcial* que presentó Stryker. Además, ordenó vista de estatus para el 28 de abril de 2025.

Por los fundamentos que expondremos a continuación, **denegamos** el recurso de epígrafe.

### I.

El 9 de febrero de 2024, 3A Group, LLC presentó una *Demanda* sobre cobro de dinero, incumplimiento de contrato y daños en contra de Stryker, Teksol Intergration Group, Inc. (Teksol)

Número Identificador

RES2025 _____

y compañía afianzadora desconocida X.[1] Sin embargo, posteriormente, el 22 de agosto de 2024, 3A Group presentó una *Demanda Enmendada*.[2] En ésta, alegó que, la corporación Stryker contrató a Teksol para la construcción de un proyecto denominado "Stryker Plant New Combined Head & Power (CHP) Facilities". Adujo que, como parte de este proyecto, Teksol contrató los servicios de la corporación 3A Group a través de dos (2) órdenes de compra, para realizar trabajos civiles en el proyecto. Sostuvo que, la primera orden de compra, por la cantidad de $272,000.00, incluyó, entre otras partidas, la construcción de "Concrete Pads", es decir, bases de hormigón reforzado para instalar los equipos "Gen Set #1", "Gen Set #2" y el "Absorption Chiller". Por otro lado, indicó que, la segunda orden de compra por la cantidad de $85,000.00, consistía en la demolición y disposición de las bases de hormigón existentes y la construcción de nuevas bases de hormigón, para la instalación de equipos de aire comprimido en el Edificio de Utilidades.

Afirmó que, los trabajos incluidos en la segunda orden de compra fueron completados y aceptados por Teksol. Por otra parte, expresó que, de acuerdo con los resultados de las pruebas de compresión de los cilindros de hormigón del *Gen Set Pad #2* y el *Chiller Pad*, estos cumplían con los parámetros de diseño según indicados en los planos estructurales que fueron suplidos por el contratista general de Teksol. Sostuvo que, estos también cumplían

---

[1] Véase, págs. 1-7 del apéndice del recurso. Cabe precisar que, el 27 de junio de 2024, Stryker presentó una *Solicitud de Sentencia Sumaria*, en la cual, en síntesis, argumentó que, los hechos incontrovertidos expuestos en su escrito, basados en prueba admisible, demostraban que Stryker no adeudaba cantidad alguna del proyecto sobre el cual se basaba la presente controversia. Particularmente, afirmó que no era responsable frente a 3A Group por el dinero reclamado en la *Demanda* al amparo del Art. 1374 del Código Civil, *infra*. Así pues, sostuvo que no existían hechos en controversia que impidieran que se dictara sentencia sumaria y en efecto, se desestimara la Demanda en su contra. En respuesta, el 29 de julio de 2024, 3A Group presentó su *Oposición a Solicitud de Sentencia Sumaria*. Evaluados los escritos, el 1 de octubre de 2024, el TPI emitió una *Resolución* declarando No Ha Lugar la Sentencia Sumaria que presentó Stryker **por entender que existían hechos en controversia por lo que procedía la celebración de un juicio en el cual se pudiese dilucidar todas las controversias que pudiesen existir entre las partes.**
[2] Íd, págs. 151-161.

con las disposiciones contenidas en el "American Concrete Institute (ACI-318-08)". Sin embargo, esbozó que, Teksol se negó a pagarle las cantidades adeudadas por la construcción y los materiales del *Gen Set Pad #2* y el *Absorption Chiller Pad,* por estos presuntamente no cumplir con la resistencia para lo que fueron diseñadas. Manifestó que, le han reclamado el pago de las cantidades adeudadas a Teksol, pero que dichas gestiones han sido infructuosas. Así pues, razonó que, las facturas adeudadas estaban vencidas y eran líquidas y exigibles.

En vista de lo anterior, argumentó que, la compañía afianzadora desconocida X y Teksol respondían solidariamente por las cantidades reclamadas en la Demanda. Ahora bien, en cuanto a Stryker, sostuvo que, este último le debía dinero a Teksol por lo que le debía dinero a 3A Group en la medida que le adeuda dinero al contratista principal. Para respaldar lo antes expuesto, citó el segundo párrafo del Art. 1374 del Código Civil de Puerto Rico de 2020 e indicó que, este último le proveía un remedio en derecho al subcontratista en detrimento del dueño de la obra por lo cual Stryker, siendo dueño de la obra objeto del presente caso, respondía por las cantidades adeudadas. Además, argumentó que, como dueña del proyecto, Stryker incumplió con el Art. 1374 inciso (c) del Código Civil de 2020, al negarse a recibir la obra cuando ésta se ejecutó conforme a lo convenido.

De este modo, sostuvo que las cantidades adeudadas eran un total de $118,007.35 por concepto de principal e intereses y $41,882.08 por concepto de principal e intereses de gastos administrativos recobrables al amparo del Art. 1372 del Código Civil de Puerto Rico de 2020. Asimismo, reclamó $39,972.35 por concepto de honorarios de abogado.

En respuesta, el 26 de septiembre de 2024, Stryker presentó su *Contestación a la Demanda Enmendada*.[3] En primer lugar, aclaró que, le proporcionaba pagos a Teksol según las facturas certificadas recibidas. A ello añadió que, el peticionario no demostró que Stryker le adeudara cuantía alguna a Teksol relacionada al proyecto en el que participó. Por otra parte, argumentó que, el recurrido no tenía acción alguna en su contra, ya que el Art. 1374 (c) del Código Civil de 2020 disponía las obligaciones del comitente hacia el contratista y no aplicaba al subcontratista con quien Stryker no tenía contrato. Por último, afirmó que tanto el *Gen Set Pad #2* como el *Absorption Chiller Pad* no cumplieron con los estándares requeridos, es decir, que arrojaron resultados deficientes según los muestreos de laboratorio por lo que los trabajos tuvieron que ser demolidos.

Ese mismo día, a saber, el 26 de septiembre de 2024, Stryker presentó una *Moción de Desestimación Parcial*.[4] Explicó que, el contrato de obra sobre el cual versaba el caso de autos era entre Stryker como comitente y Teksol como contratista. Sostuvo que, 3A Group era solo un subcontratista que contrató Teksol para unas tareas específicas del proyecto, por lo que no tenía relación contractual con Stryker. Así pues, argumentó que las reclamaciones que pudiesen surgir al amparo del Art. 1374 (c), únicamente podrían ser entre Stryker y Teksol y no así entre Stryker y un subcontratista como lo era 3A Group. Por otro lado, indicó que el Art. 1372 no creaba una causa de acción para reclamar los pagos por gastos administrativos incurridos con relación a la obra, ni siquiera a favor del comitente o el contratista. Por estas razones, solicitó que, se desestimara la causa de acción bajo el inciso (c) del Art. 1374 y el Art. 1372 del Código Civil de 2020. Razonó que, solo quedaría

---

[3] Íd., págs. 187-196.
[4] Íd., págs. 175-186.

pendiente la reclamación bajo la segunda oración del Art. 1374, mediante la cual Stryker podría responder por la presunta deuda de Teksol con 3A Group hasta el monto que Stryler adeudara a Teksol por el proyecto al momento en que 3A Group reclamó.

Posteriormente, el 4 de noviembre de 2024, 3A Group presentó su *Oposición a Solicitud de Desestimación Parcial.*[5] En esta, argumentó que, la limitación que pretende Stryker adjudicarle al Art. 1374 del Código Civil de 2020, al expresar que es un derecho que únicamente lo puede reclamar el contratista principal de la obra, no está contenida expresamente en el referido artículo. Por ende, sostuvo que una vez escuchada y aquilatada la prueba que presenten las partes, el juzgador del caso podría interpretar el artículo. Ahora bien, en cuanto a los gastos administrativos que reclamó al amparo del Art. 1372 del Código Civil de 2020, sostuvo que contrario a lo que argumentó Stryler, el referido artículo no expresaba que un subcontratista, como lo era 3A Group, no tenía derecho a reclamar gastos directos e indirectos causados por las actuaciones del contratista general, en el presente caso Teksol y el dueño de la obra, Stryker. Por las razones antes expuestas, concluyó que no procedía la desestimación parcial solicitada.

Evaluados los escritos de ambas partes, el 7 de febrero de 2025, el TPI emitió una *Resolución Interlocutoria* declarando No Ha Lugar a la *Moción de Desestimación Parcial* que presentó el peticionario. Inconforme con este dictamen, el 5 de marzo de 2025, Strylker presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

> **Erró el Tribunal de Primera Instancia al denegar la Moción de Desestimación Parcial de Stryker a pesar de que nuestro ordenamiento establece claramente que la única reclamación contractual que puede hacer un subcontratista contra un dueño de obra, con quien no tiene una relación contractual directa, es para recobrar los dineros que le adeuda el**

---

[5] Íd., págs. 208-224.

**contratista al subcontratista hasta la suma que el dueño de la obra le adeude al contratista, por lo que las reclamaciones contractuales adicionales de la recurrida deben ser desestimadas.**

Atendido el recurso, el 7 de marzo de 2025, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 19 de marzo de 2025 para presentar su postura en cuanto al recurso. Oportunamente, 3A Group presentó su *Alegato del Recurrido en Petición de Certiorari* y negó que el TPI cometiera el error que el peticionario le imputó. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nos. *Veamos.*

## II.

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto, ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera

Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari*. La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, s*upra*, es determinante por sí solo para el

ejercicio de jurisdicción, y tampoco constituyen una lista exhaustiva. *García v. Padró, supra.* La norma vigente es que un tribunal apelativo solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que, nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que, en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

### IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones